UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DANA MARTIN,                            )
                                        )
         Plaintiff,                     )
                                        )          CIVIL ACTION NO.
VS.                                     )
                                        )          3:05-CV-0729-G
SBC DISABILITY INCOME PLAN,             )
                                        )              **ECF**
         Defendant.                     )

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the defendant, SBC Disability Income Plan ("Plan"), for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on all claims asserted against it by the plaintiff, Dana Martin ("Martin"). For the reasons stated below, the defendant's motion for summary judgment is granted.

I.  BACKGROUND

This case challenges the decision of an administrator of an employee pension benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*.

On November 5, 1984, Martin began work for SBC Advanced Solutions, Inc. ("SBC ASI") as a data center technician. Defendant SBC Disability Income Plan's Brief in Support of Motion for Summary Judgment ("Motion") at 1; Appendix to Defendant SBC Disability Income Plan's Brief in Support of Motion for Summary Judgment ("Appendix to Motion") at 521.

Third-party vendor Sedgwick Claims Management Services, Inc. ("Sedgwick") administered disability benefits claims under the Plan. Affidavit of Lisa Trevino ("Trevino Affidavit") ¶ 4, *attached to* Appendix to Motion at 5-6. Under the contract between Sedgwick and SBC Communications, Inc.,[1] Sedgwick "process[ed] disability claims, review[ed] medical records, request[ed] additional medical documentation to support the claims, and ultimately recommend[ed] acceptance or denial of disability benefits claims." *Id.* During 2004 and 2005, Sedgwick employees who processed claims under the Plan were collectively known as the SBC Medical Absence and Accommodations Resource Team ("SMAART"). *Id.*

In response to a disability claim submitted by Martin, SMAART informed Martin -- by letter dated February 25, 2004 -- that she was required to submit to SMAART by March 4, 2004, relevant medical documentation of her claim. Letter dated February 25, 2004, *attached to* Appendix to Motion at 797-98. SMAART conditionally granted Martin's claim for disability benefits from February 25, 2004

---

[1] SBC Communications, Inc. is now known as AT&T, Inc. Trevino Affidavit ¶ 4.

through March 9, 2004 to allow Martin time to gather relevant medical documentation to support her claim. Motion at 2.

On March 1, 2004, SMAART received Martin's medical information from Joseph Pflanzer, M.D., Martin's allergist. *Id.* at 3; Appendix to Motion at 407.

On March 3, 2004, SMAART received an initial physician statement regarding Martin from Ned Beiser, D.O., P.A. ("Dr. Beiser"), Martin's primary care physician. Motion at 3; Appendix to Motion at 407, 785. Dr. Beiser listed Martin's diagnoses as bipolar-depressed, allergies, sinusitis, pharygitis, and urticaria. Appendix to Motion at 785. Dr. Beiser referred Martin to a psychiatrist. *Id*. SMAART case manager Andrea Adams, LPC ("Adams") noted in Martin's case file that Martin's psychiatric appointment was scheduled for March 15, 2004. Motion at 3; Appendix to Motion at 408. Martin's psychiatrist was Dr. Thomas W. Lucas, M.D. ("Dr. Lucas"). Motion at 3. SMAART conditionally approved Martin's disability claim from March 5, 2004 through March 17, 2004 to allow Martin time to see Dr. Lucas. *Id.*; Appendix to Motion at 779-80. On March 9, 2004, Adams sent Dr. Lucas's office a mental health provider statement via facsimile. Appendix to Motion at 774-78. The facsimile cover page included the following instructions.

> Your patient's self-reported information (symptoms) alone will not be sufficient to support disability.
>
> Recommendations of disability must be supported by clinical observations (signs) from your sessions. Please use "as evidenced by" statements whenever possible.

> Clinical Observations must support a severity of impairment that prevents your patient form [sic] performing the essential duties of their job. Functionality must be addressed. Also we need any restrictions and limitations which may be in place at the time of return to work.

*Id*. at 775.

On March 15, 2004, Dr. Lucas returned Martin's completed mental health provider statement. *Id.* at 772-73. Although Adams did not deem Dr. Lucas's statement supportive of Martin's disability claim, on March 17, 2004, Adams referred the matter to physician advisor ("PA") Dr. Richard Harris ("Dr. Harris"). Motion at 3-4; Appendix to Motion at 404. On March 22, 2004, Dr. Harris concluded that "[g]iven that medications were just started [,] . . . severity continues to be established." Appendix to Motion at 403. SMAART extended Martin's disability approval through April 4, 2004 based on Dr. Harris's report. Motion at 4; Appendix to Motion at 402. However, Adams noted that

> [e]ven with a GAF of 55, no memory impairment and no clear evidence of impairment in concentration will approve claim based on PA review. It appears PA based decision as he notes on PREVIOUS medical that did support approval through 3/17/2004 as there is no notes of [Martin] being housebound in the lastest [sic] update from her doctor.

Appendix to Motion at 402.

On April 2 and 6, 2004, Dr. Lucas sent Adams progress notes on Martin's case. *Id*. at 765-68. On April 7, 2004, Adams sent Martin's case to Dr. Atique Khan ("Dr.

Khan") for a PA review. *Id.* at 399. On April 8, 2004, Dr. Khan concluded that "currently data presented supports severity of impairment for another week. . . ." *Id.* Based on Dr. Khan's review, Martin's disability benefits were extended through April 18, 2004. Motion at 4; Appendix to Motion at 398.

On April 14, 2004, Dr. Lucas sent Adams a progress note on Martin's case. Motion at 4; Appendix to Motion at 761. Based on this note, Adams noted that "[o]bserved medical info does not support approval of extension of benefits -- does not indicate severity of illness. Improvement is noted by [Martin]." Appendix to Motion at 397. On April 15, 2004, Adams scheduled a PA review between Dr. Judi Stonedale ("Dr. Stonedale") and Dr. Lucas for 11:45 a.m. on April 16, 2004. *Id.* at 396. Adams then forwarded Martin's file to Dr. Stonedale. *Id.* Dr. Stonedale contacted Dr. Lucas at the appointed time on April 16, 2004, but she was forced to leave a voice mail message as Dr. Lucas was unavailable. Motion at 5; Appendix to Motion at 394-95. In her April 19, 2004 comments, Dr. Stonedale stated that direct communication with Dr. Lucas was imperative due to a number of concerns, such as whether Martin's drug levels were monitored by laboratory results, what medications had been prescribed, and what Martin's lithium level was. Motion at 5; Appendix to Motion at 395. On April 20, 2004, Adams contacted Dr. Lucas's office to determine Martin's medications. Appendix to Motion at 393. With no response to her inquiry, on April 21, 2004, Adams contacted Dr. Lucas's office again. *Id.* A nurse in the

office told Adams that the chart was unavailable as Martin was there but assured Adams that Dr. Lucas or the nurse would call Adams back after pulling the chart. *Id.* A short time later, Dr. Lucas returned the call and gave a verbal update on Martin's case. *Id.* at 391-92. Based on this conversation and Dr. Stonedale's PA review, Adams extended Martin's disability benefits through May 2, 2004. Motion at 5; Appendix to Motion at 759.

On April 28, 2004, Adams spoke with Dr. Lucas's office. Adams stated that SMAART required clear observable data as to what was preventing Martin from returning to work for even half workdays. Motion at 5; Appendix to Motion at 390. On April 29, 2004, Adams received a progress note from Dr. Lucas regarding Martin. Appendix to Motion at 753-54. On April 30, 2004, Adams received Martin's laboratory results. *Id.* at 751-52. Adams then forwarded Martin's case to Dr. Stonedale for a PA review. *Id.* at 388. Dr. Stonedale could not reach Dr. Lucas on the cellular telephone number he had provided as that number had been disconnected. Motion at 6; Appendix to Motion at 387. On May 3, 2004, Dr. Stonedale issued her findings and concluded the following:

> I am very anxious to speak with Dr. Lucas I think it would help clear up some of the mystery concerning [Martin] since she has been off for quite a while, it looks like all of her stressors are social. I do not see anything here that would indicate she is unable to work because of her functional disability. This information does not support severity of impairment with significant limitation of function.

>However, I believe that is a moot point since it looks like
>this has already been extended.

Appendix to Motion at 388.

In a letter dated May 5, 2004, Adams notified Martin that her claim for continued disability benefits was denied. *Id.* at 745-47. Enclosed in the letter was a copy of the appeals procedure and appeals form. *Id*. at 745-50. Adams informed Martin that Martin had 180 days to appeal the denial of benefits. *Id.* at 746.

On May 5, 2004, Martin began participating in an outpatient program at The Cedars Hospital ("Cedars") three days per week and continued therapy with Dr. Lucas. Motion at 7; Appendix to Motion at 382. On May 13, 2004, Adams noted that "[o]bservable data does not indicate severity of illness . . . [Martin] however is in specialized care . . . and have requested add info from program to consider for approval." Appendix to Motion at 380. On May 12 and 14, 2004, Adams received additional information from Dr. Lucas but determined that this information did "not support overturn of denial." *Id*. at 379, 734-37. In a letter dated May 18, 2004, Adams informed Martin that the May 12 and May 14 correspondence from Dr. Lucas did "not alter the previous denial decision" and reminded Martin of her right to appeal. *Id.* at 733.

In a letter dated May 24, 2004, Martin appealed the denial of her disability benefits. *Id.* at 644. On June 3, 2004, SMAART acknowledged receipt of Martin's appeal. *Id*. at 641. After reviewing additional information from Dr. Lucas and

- 7 -

Cedars, in a letter to Martin dated July 9, 2004, a SMAART appeals specialist authorized payment of short term disability benefits from May 3, 2004 through July 25, 2004.  Motion at 7; Appendix to Motion at 600; see also *id*. at 445-48.  This brought the entire claims approval period from February 25, 2004 through July 25, 2004.  Appendix to Motion at 369, 602.

On July 22, 2004, Adams contacted Cedars and discovered that Martin had been discharged from outpatient treatment in mid- to late June.  *Id*. at 366.  On July 26, 2004, Adams referred Martin's file to Marcus Goldman, M.D. ("Dr. Goldman") for a PA review.  Motion at 8; Appendix to Motion at 363-65.  On July 27, 2004, Dr. Goldman concluded that "[w]hile some of the data detail her complaints, there is a lack of objective findings that would warrant continuation of disability."  Appendix to Motion at 364.  In a letter dated July 30, 2004, Adams informed Martin that Martin's disability claims were denied effective July 26, 2004.  *Id*. at 584.  The denial letter stated that Martin's claim did not fall within the definition of "total disability," which is defined in the Plan as follows:

> "'Total Disability' or 'Totally Disabled' means, with regard to Short Term Disability, that because of Illness or Injury, an Employee is unable to perform all of the essential functions of his job or another available job assigned by the Participating Company with the same full- or part-time classification for which the Employee is qualified."

*Id*.; *see also* Motion at 8.

On August 2, 2004, Martin requested that the SMAART Quality Review Unit send all documents pertaining to her disability claim and denial of that claim from June 3, 2004 forward. Appendix to Motion at 514. On August 11, 2004, SMAART sent Martin the requested materials. *Id*. at 511. In a letter dated August 12, 2004, Martin appealed the denial of benefits to the SMAART Quality Review Unit. *Id*. at 442-44. As part of this administrative appeal, appeals specialist Pat Melycher ("Melycher") reviewed Martin's claim and file. Motion at 9. Furthermore, Melycher submitted Martin's file to Robert N. Polsky, M.D. ("Polsky"), "an independent physician advisor and board certified psychiatrist." *Id.*

On September 6, 2004, Martin was admitted to Methodist Hospitals of Dallas for a drug overdose. Appendix to Motion at 501-03. On September 7, Martin's boyfriend Scott Cottrell ("Cottrell") called SMAART to alert it of the suicide attempt and stated that he would call back later to go over medical documents needed to complete Martin's file on appeal. *Id*. at 355. SMAART informed Cottrell that Martin had been given a 14 day extension to submit medical records. *Id*. On September 8, 2004, Martin was admitted to Cedars. Appendix to Motion at 494-95.

In a letter sent via facsimile to the SMAART Quality Review Unit on September 29, 2004, licensed clinical psychologist Katherine P. Donaldson ("Dr. Donaldson") supported Martin, under Dr. Donaldson's care since July 26, 2004, in Martin's appeal for denial of benefits. *Id*. at 485-86.

As a result of his review, Dr. Polsky submitted a letter dated October 7, 2004, in which he opined that there was not objective evidence of Martin's functional impairment.  See generally *id*. at 475-77.  In preparation for his report, Dr. Polsky reviewed Martin's claim log from February 25, 2004 through September 30, 2004, as well as other information, including but not limited to data submitted to SMAART from Dr. Beiser covering the period June 9, 1999 through March 1, 2004, Dr. Lucas covering the period March 15, 2004 through September 7, 2004, Dr. Donaldson, Cedars, and Methodist Health System.  Appendix to Motion at 475-77.  Dr. Polsky attempted to reach Dr. Lucas by telephone on four occasions, but he was unsuccessful.  Appendix to Motion at 476. Dr. Polsky concluded the following:

> There was no clear clinical documentation indicating [Martin] to pose any acute risk to self or others, be psychotic or be unable to perform the activities of daily living.  There are no formal mental status examination findings that would substantiate problems with memory, cognition, or concentration.  The focus of her treatment has been on issues regarding her alleged history of past sexual abuse all of which serves to keep her in turmoil and destabilized rather than stabilizing her.  Therefore the findings do not support an inability for Ms. Martin to perform job duties from 07/26/04 to the present.

*Id*. at 477.

Accordingly, in a letter dated October 8, 2004, Melycher informed Martin that Martin's appeal was partially denied.  *Id*. at 469-70.  In that letter, Melycher informed Martin that

> You were approved for benefits under the Plan from 2/25/04 through 7/25/04.
>
> * * *
>
> Medical documentation does support disability approval from 09/06/04 through 09/27/04 for your hospitalization at Methodist and Cedars Hospitals.
>
> Medical documentation does not support your inability to perform your essential job duties from 7/26/04 through 09/5/04 and from 09/28/04 through your return to work date.

*Id*. at 470.

In a letter dated December 30, 2004, Martin appealed the denial of her disability claim "for the period of 09/28/2004 forward." *Id*. at 417. In a letter dated January 4, 2005, SMAART ERISA Specialist Doreen Ongayo ("Ongayo") informed Martin that the October 8, 2004 denial of benefits determination was final. *Id*. at 416. Ongayo informed Martin that she had the right to bring suit under ERISA after a full exhaustion of administrative remedies prescribed by the Plan. *Id*. Martin filed this suit on April 14, 2005, alleging wrongful denial of benefits under ERISA. *See generally* Original Complaint. On May 2, 2005, SBC ASI terminated Martin's employment.

## II. ANALYSIS

### A. Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[2] The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt

---

[2] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

- 12 -

as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the nonmovant, *id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### B. Standard of Review for Evaluating the Denial of Benefits

In the Fifth Circuit, an ERISA "plan administrator's factual determinations are always reviewed for abuse of discretion; but its construction of the meaning of plan terms or plan benefit entitlement provisions is reviewed *de novo* unless there is an express grant of discretionary authority in that respect, and if there is such then review of those decisions is also for abuse of discretion." *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004); see also *Vega v. National Life*

*Insurance Services,* 188 F.3d 287, 295 (5th Cir. 1999) (en banc); *Sweatman v. Commercial Union Insurance Co.*, 39 F.3d 594, 597-98 (5th Cir. 1994). Discretionary authority cannot be implied. *Chevron Chemical Company v. Oil, Chemical and Atomic Workers Local Union 4-447*, 47 F.3d 139, 142 (5th Cir. 1995) (citing *Cathey v. Dow Chemical Company Medical Care Program*, 907 F.2d 554, 558-59 (5th Cir. 1990), *cert. denied*, 498 U.S. 1087 (1991)). In the instant case, Sedgwick, as plan administrator, has been given "full and exclusive authority and discretion to grant and deny claims under the Plan, including the power to interpret the Plan and determine the eligibility of any individual to participate in and receive benefits under the Plan." The Plan § 5.5.4, Defendants' Appendix at 25. Therefore, Sedgwick's interpretation of the Plan, as well as its factual determinations made in the course of its denial of Martin's claims, will be reviewed for abuse of discretion.

District courts in the Fifth Circuit may "employ a two-step analysis in determining whether a plan administrator abused its discretion in construing plan terms." *Vercher*, 379 F.3d at 227 (citing *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999)). First, the court must determine the legally correct interpretation of the plan, and whether the administrator's interpretation accords with the proper legal interpretation. *Id*. If the court determines that the plan administrator's interpretation is legally sound, then "no abuse of discretion occurred and the inquiry ends." *Id.* If the administrator's interpretation does not comport

with the court's legal interpretation, then the court must determine whether the administrator's interpretation constitutes an abuse of discretion.  *Id.* at 227-28.  Even if the court determines that a legally correct standard was applied, the court must still consider whether the administrator's factual determinations were an abuse of discretion.  *Id.* at 231.  The court is not required to use the two-prong test articulated above when, given the allegations and facts of the complaint, it is unnecessary.  See *Baker v. Metropolitan Life Insurance Company*, 364 F.3d 624, 629 (5th Cir. 2004); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994).

      The crux of Martin's argument is that agents of Sedgwick denied Martin's claims because Martin failed to provide sufficient medical support of disability.  Plaintiff Dana Martin's Brief in Opposition to Defendant's Motion for Summary Judgment ("Response") at 25, 28.  The rejection of claims based on the absence of medical support is a factual determination.  *Meditrust Financial Services Corporation v. Sterling Chemicals, Inc.*, 168 F.3d 211, 214 (5th Cir. 1999).  Thus, the court need only review, for an abuse of discretion, the factual determinations made by the defendant in its review of Martin's claims.

      A plan administrator abuses its discretion if it acts arbitrarily or capriciously.  *Id.*  When reviewing the administrator's decision for arbitrary and capricious actions resulting in an abuse of discretion, the court should affirm the administrator's decision if it is supported by "substantial evidence."  *Id.* at 215.  "A decision is

arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Id.* (citing *Bellaire General Hospital v. Blue Cross Blue Shield*, 97 F.3d 822, 828-29 (5th Cir. 1996)).

### C. Factual Determinations Made in Denying Martin's Claim

Martin asserts that the defendant abused its discretion in denying her claim because the diagnoses of Martin's treating physicians were wholly ignored or discounted. Response at 25, 28. According to Martin, "Dr. Polsky's opinion was arbitrary and capricious because it was made with regard to the facts or evidence in the record."[3] *Id*. at 28. The defendant, on the other hand, denies that it acted arbitrarily and capriciously in denying Martin's claims as "Martin's disability claim was reviewed and recommended for denial for the stated time periods by a medical case manager, a Physician Advisor, an appeals specialist, and an independent physician advisor because Martin failed to provide any objective or clinical data to support her claim of disability." Defendant SBC Disability Income Plan's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Reply") at 3.

Martin's generalization that her claim was arbitrarily and capriciously denied is not supported by the record. A plan administrator's decision is not arbitrary or capricious because it came down to a permissible choice between the claimant's

---

[3] The court assumes that Martin intended to assert that "Dr. Polsky's opinion was arbitrary and capricious because it was made *without* regard to the facts or evidence in the record."

physicians and independent reviewing physicians.  *Vercher*, 379 F.3d at 232 (citing *Sweatman*, 39 F.3d at 602, and *Donato v. Metropolitan Life Insurance Company*, 19 F.3d 375, 380 (7th Cir. 1994)).  It is not the burden of the administrator to compile evidence of disability; rather, the burden is on the claimant to submit evidence that supports her claim for benefits.  See, *e.g.*, *Vega*, 188 F.3d at 298.  There is substantial evidence in the record to establish that the decision to deny Martin's claims is neither arbitrary nor capricious.  The existence of some evidence in the record that goes against the decision does not, in and of itself, cast doubt upon the defendant's discretion in denying Martin's claims.  Martin has failed to point to evidence in the record that shows any abuse of discretion on the part of the defendant.  Even if the court were to give the administrator's decision less than usual deference, there is a rational connection between the decision to deny Martin's benefits and the recommendation of Dr. Polsky, which was based on all of the medical submissions regarding Martin's claim.  Therefore, Martin has failed to establish a genuine issue of material fact relating to any abuse of discretion on the part of the defendant.

### III.  CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is **GRANTED**.  Judgment will be entered for the defendant.

**SO ORDERED**.

October  26 , 2006.

/s/ A. Joe Fish
A. JOE FISH
CHIEF JUDGE